```
                IN THE UNITED STATES DISTRICT COURT
               FOR THE NORTHERN DISTRICT OF ALABAMA
                          SOUTHERN DIVISION
```

RAYMOND NMI RENDER,          )
                             )
    Plaintiff,               )
                             )
                             )   CIVIL ACTION NO.
v.                           )
                             )   98-AR-2220-S
CELOTEX CORPORATION,         )
                             )
    Defendant.               )

FILED
00 MAR -1 AM 11:12
U.S. DISTRICT COURT
N.D. OF ALABAMA

ENTERED
MAR - 1 2000

## MEMORANDUM OPINION

Presently before the court is defendant's motion for summary judgment. Plaintiff, Raymond Render ("Render"), alleges that defendant Celotex Corporation("Celotex"), engaged in several acts designed to retaliate against Render for his filing of a charge of discrimination with the EEOC. Celotex contends that there is no genuine issue of material fact with respect to Render's claims of retaliation and that it is entitled to judgment as a matter of law.[1] For the reasons set forth in the opinion below, the court will grant Celotex's motion as to all retaliation claims except one.

### Procedural History

On August 31, 1998, Render filed his original complaint

---

[1] Render apparently alleges retaliation under Title VII, the ADEA, and 42 U.S.C. § 1981. However, the retaliation analysis is the same regardless of the particular statute invoked.

against Celotex, alleging violations of Title VII, the ADEA, and 42 U.S.C. § 1981.  His claim included counts of discrimination and retaliation.  Upon learning that Celotex was in Chapter 11 Bankruptcy, this court dismissed the action without prejudice on September 29, 1998.  On December 14, 1998, this court granted Render's motion to reinstate the action because Celotex had emerged from bankruptcy.

On June 1, 1999, Render filed a motion to amend his original complaint to comply with the United States Bankruptcy Court for the Middle District of Florida's Order Confirming the Reorganization Plan for Celotex.  Render agreed to amend his complaint to delete any claims that arose prior to the effective date of the reorganization plan, which was May 30, 1997.  Render's motion to amend asked the court to allow him to delete Counts 1 and 3 for race discrimination under Title VII and § 1981, respectively, as well as Count 2 for age discrimination.  His motion was granted on June 3, 1999.  Thus, the only count left was Count 4, retaliation.

<b><u>Undisputed Material Facts</u></b>

Celotex manufactures various types of asphalt roofing and roofing felt products at its Fairfield, Alabama plant.  Render was hired by Celotex to work in the Fairfield plant in 1985.  He was hired initially as a laborer in the production department.  After

working in various positions, Render eventually moved to the shipping department as a forklift operator.

In 1991, one of the two foremen in the shipping department became disabled and retired. Rather than to replace that foreman, Celotex began using hourly employees as "leaders" in the shipping department. A leader in the shipping department coordinates the activities of forklift operators and performs some of the tasks that a foreman would perform. Render was selected as a leader on the second shift. Render served as a temporary foreman in the shipping department when foreman Jim Hill ("Hill") was terminated. As temporary foreman, Render performed many, but not all, of the duties of a foreman. For example, Render had no authority to discipline employees or to participate on behalf of his employer in the grievance procedure.

Upon learning that Celotex was interviewing people to replace Hill, Render notified Bob Thames ("Thames") that he was interested in being considered for the foreman position. Thames interviewed Render for the position in June of 1996. Render was one of five candidates considered for the foreman position. Celotex chose Kevin Todd ("Todd") to fill the foreman position, and Render continued as leader in the shipping department.

In July of 1996, Render filed a charge of discrimination with

3

the EEOC, claiming that he was not awarded the foreman position due to his race and age.

In June of 1997, over 11 months after Render filed the EEOC charge, the saturator department experienced a reduction in force and went from running two shifts to only one shift. The foreman of the eliminated shift, Andy Anders ("Anders"), was moved to the shipping department as a second foreman. Subsequently, Celotex determined that it did not need a shift leader in the shipping department, so Render was returned to his duties as forklift operator only.

In August of 1997, Anders moved from the shipping department to the roofing department. This left a foreman vacancy in the shipping department. In September of 1997, Celotex selected Chris Honeycutt ("Honeycutt") to fill the vacancy. Thus, Render was not promoted to foreman.

Since May 30, 1997, Celotex has had openings on three occasions for a mechanic. These openings were filled on November 24, 1997, August 3, 1998, and May 3, 1999. Render was not selected for any of these positions.

In May of 1998, Celotex had an opening for a lab assistant. Celotex posted the vacancy on a bulletin board at the plant. Render turned in a bid for the position, but was not interviewed

4

for it.

### Summary Judgment Standard

Rule 56(c), F.R.Civ.P. provides that summary judgment shall be granted if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  The Supreme Court has emphasized that this language means exactly what it says: there must be a _genuine_ issue of _material_ fact, not merely some factual dispute.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-248, 106 S.Ct. 2505, 2510 (1986). What this standard means in practice is that "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." Anderson, 477 U.S. at 249, 106 S.Ct. at 2511 (citing First National Bank of Arizona v. Cities Service Co., 391 U.S. 253, 88 S.Ct. 1575 (1968)).

On defendant's motion for summary judgment, the court must look at the evidence, construed in plaintiff's favor, to see if a jury could return a verdict for plaintiff.  If so, defendant's motion for summary judgment must be denied.  If, however, as a matter of law, a jury could not return a verdict for plaintiff, defendant's motion must be granted.

5

**Retaliation Claims**

Render claims that Celotex retaliated against him on four occasions: 1) when it demoted him from the shift leader position in June of 1997; 2) when it failed to promote him to foreman in the shipping department in September of 1997; 3) when it failed to award him a job as a millwright/mechanic in 1997, 1998, and 1999; and 4) when it failed to award him the job of lab assistant in May of 1998. The court will address each instance of alleged retaliation separately.

As to any other instances of alleged retaliation, the court agrees with Celotex that any claims based on events which occurred prior to the effective date of the reorganization plan are barred. This includes Render's complaint that Joe Simpson made $.25 more than him when Render was a salary relief operator and his complaint that he should have been hired as a shipping foreman instead of Todd in June of 1996. Furthermore, the court notes that the selection of Todd in June of 1996 could not possibly be a retaliatory act because it occurred *before* plaintiff filed his EEOC complaint.

1. **The Removal of Render as Shift Leader in the Shipping Department in June of 1997**

In order to establish a prima facie case of retaliation,

Render must show: (1) that he engaged in protected activity; (2) that the decision-maker was aware of that activity; (3) that he suffered an adverse employment action;[2] and (4) there was a causal link between the protected activity and the adverse action. Maniccia v. Brown, 171 F.3d 1364, 1369 (11th Cir. 1999). In Maniccia, the Eleventh Circuit added employer knowledge as a separate and distinct element of the prima facie case. Prior Eleventh Circuit precedent explained that, in order to show a causal link, "At a minimum, a plaintiff must generally establish that the employer was actually aware of the protected expression at the time it took the adverse employment action." Goldsmith v. City of Atmore, 996 F.2d 1155, 1163 (11th Cir. 1993). Whether knowledge is a separate element, or whether it is part of the causal link element, this court believes that a plaintiff must offer evidence of employer knowledge because it is logically impossible to retaliate against something of which one has no knowledge.

Celotex argues that Render cannot establish the causal connection element of his prima facie case because too much time elapsed between the protected activity and the alleged adverse

---

[2] The court notes that, despite plaintiff's assertions to the contrary, the EEOC's issuance of a notice of a right to sue is not a "protected activity."

7

action. It is undisputed that almost a full year passed between Render's filing of his EEOC charge and his removal as shift leader. However, while this court is aware that the Eleventh Circuit and other circuits have held that a causal connection is impossible because, for example, 15 months, 13 months, 9 months, or 4 months have passed, this court is unwilling at the summary judgment stage to arbitrarily pick a time past which retaliation is no longer possible. See Maniccia, 171 F.3d at 1370. If this court headed down that road, it would have to articulate the reason why 12 months is too long but 11 months is not, or, perhaps, why 12 months is permissible while 13 is not. Until there is binding precedent on this court which sets a particular time or until there is a legislative directive on the matter, this court will allow the jury to determine whether 11 months is too long for there to be a causal connection.[3]

Assuming *arguendo* that Render can establish his prima facie case, Celotex argues that it had a legitimate, non-discriminatory reason for removing him from the position of shift leader. Celotex points out that because of a reduction in force in one department,

---

[3] Defendant's primary argument as to each of the four incidents is that too much time passed to establish a causal connection. Because the court's response is the same as to all four claims, the court will not repeat its above analysis under each of the four headings.

8

Anders was reassigned as a foreman in the shipping department. Celotex argues that with two foremen in the shipping department, it made the business decision that it no longer needed a shift leader.

Render has produced no evidence which would tend to show that Celotex's reason is unworthy of credence.  In sum, Render has produced no evidence to show that Celotex was doing anything other than reassigning someone whose job had been eliminated, and then making a personnel decision based on that reassignment.  Thus, Render's retaliation claim as to his removal of shift leader fails as a matter of law.

### 2.  Celotex's failure to promote Render to Foreman in September of 1997

Assuming that Render has established his prima facie case with respect to the promotion decision in September of 1997, Celotex argues that Render was not promoted because Render had had altercations with customers and because he had problems getting along with customers and other employees.  This easily qualifies as a legitimate, non-discriminatory reason for not promoting someone. Thus, the question is whether Render has offered evidence that would tend to cast doubt on Celotex's veracity when it states this reason.  The court believes that Render has created a genuine issue of material fact as to the truthfulness of defendant's articulated

9

reason for this non-promotion. As Render points out, there is nothing in his personnel file referring to any problems or altercations with customers or any complaints that other employees had made regarding Render. The court also notes that Render held the position of team leader for approximately 6 years. Also, Render has offered testimony of one other employee who stated that he had never heard of any problems regarding Render and/or his personality and temperament.

The court will deny Celotex's motion for summary judgment as to Render's failure to promote retaliation claim.[4]

3. <u>Not Selecting Render for the millwright/mechanic positions</u>

Celotex points out that there is no evidence that the decision-maker, John Bradberry ("Bradberry"), knew that Render had filed an EEOC complaint. Render has produced no evidence, either direct or circumstantial, that Bradberry knew of the EEOC charge. Instead, Render has offered evidence that Bradberry knew about a discrimination charge which Render had filed in 1986. The court does not understand how Bradberry's knowledge of a charge filed by plaintiff in 1986 leads to the conclusion that Bradberry knew of

---

[4] As this court has noted, Celotex's decision not to promote Render in June of 1996 logically cannot form the basis for a retaliation claim. Thus, the court is confused by both parties' extensive discussion of the subject.

10

the 1996 charge. Therefore, Render cannot establish his prima facie case.

However, even if Render could do what he failed to do, namely, show that Bradberry knew of the charge, Render would not survive summary judgment because Celotex has a legitimate, non-discriminatory reason for not hiring him. Celotex points out that it only hired Class A Mechanics, and Render was not a Class A Mechanic. In Render's brief, he responds that Celotex's requirement of two years experience operates to disqualify all black applicants because no black employee has two years experience. The court cannot see how this is relevant to a claim of retaliation. It appears that Render is making a disparate impact argument, which is completely independent of a retaliation inquiry. In fact, if Render were to demonstrate that Celotex's policy disparately impacted black applicants in general, that would tend to disprove his claim that he was not selected because the company was retaliating against him personally for his filing of an EEOC charge. In sum, a company is free to set its own qualifications for positions, and Render does not meet Celotex's qualifications for a Grade A Mechanic. In the absence of evidence which, if believed by a jury, would demonstrate that Celotex's explanation for not hiring him is unworthy of credence, plaintiff's

claim for retaliation cannot survive summary judgment.

### 4. Not Selecting Render for the Lab Assistant Position

Render has produced no evidence that the decision-maker, Gail Birdsong ("Birdsong"), knew that he had filed a charge with the EEOC. Birdsong came to Celotex's Fairfield plant in April of 1998. She made the lab assistant decision one month later in May of 1998. Render has produced no evidence, either direct or circumstantial, that Birdsong knew of the charge he had filed almost two years prior to her coming to Celotex. Thus, plaintiff's claim fails as a matter of law.

### Conclusion

A separate and appropriate order will be entered.

DONE this 1st day of March, 2000.

_____
WILLIAM M. ACKER, JR.
UNITED STATES DISTRICT JUDGE